SLIP OPINION

Cite as 2016 Ark. App. 508

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-585

| | |
|---|---|
| NATALIE FORBES<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br><br>APPELLEE | **Opinion Delivered** October 26, 2016<br><br>APPEAL FROM THE GARLAND<br>COUNTY CIRCUIT COURT<br>[NO. 26JV-2014-730]<br><br>HONORABLE STEPHEN CHOATE,<br>JUDGE<br><br>AFFIRMED |

**CLIFF HOOFMAN, Judge**

Appellant Natalie Forbes appeals from the order of the Garland County Circuit Court terminating her parental rights to her minor daughter, Y.F. On appeal, Forbes challenges the sufficiency of the evidence to support the ground for termination. We affirm.

On September 30, 2014, the Arkansas Department of Human Services (DHS) began investigating a complaint that Y.F. (DOB 11/2/13) was in danger due to extreme environmental neglect. Forbes was incarcerated at the time of the complaint, and DHS responded to the home of Y.F.'s maternal grandmother, Maxine Forbes, where Y.F. was residing. DHS discovered that there were thirteen cats and two dogs living in the twenty-one-foot trailer, that the cats had no litter box and used the top of the cabinets as a bathroom, and that the home had an overwhelming odor of animal urine and feces. DHS also noted that Y.F.'s bottle smelled strongly of spoiled milk and cat urine. DHS removed Y.F. from the home on October 1, 2014, and a petition for emergency custody was filed. The circuit court

SLIP OPINION

entered an ex parte order for emergency custody on October 3, 2014.

Probable cause for the removal was found on October 7, 2014. The circuit court noted that DHS had been involved with the family since July 2014 and had provided supportive services such as formula, cleaning supplies, and referrals for food stamps and WIC; however, the court found that these services did not prevent removal because Forbes was incarcerated and had left Y.F. with the maternal grandmother whose home posed a great danger to the child's health and safety due to environmental neglect. Forbes was ordered to follow court orders and the case plan; to demonstrate the ability to properly care for Y.F. and to provide for her health, safety, and welfare; to submit to random drug screens; to complete parenting classes; to submit to individual counseling; to obtain and maintain stable employment for a period of six months; and to obtain and maintain stable housing for a period of six months.

Y.F. was adjudicated dependent–neglected on January 7, 2015, on the basis of neglect caused by Forbes's failure or inability to provide for the necessary physical, mental, and emotional needs of the child, including the failure to provide a shelter that did not pose a risk to Y.F.'s health and safety. In addition to the previous court orders, Forbes was also ordered to ensure that her home was environmentally safe and clean.

A review hearing was held in April 2015. The circuit court found that Forbes had been complying with the case plan and court orders and that she had made progress toward alleviating the conditions that had caused the removal of Y.F. At the next review hearing in June 2015, the court found Forbes in partial compliance although she had been arrested and

had tested positive for THC.

The permanency-planning hearing was held in September 2015. The circuit court found that Forbes had been making significant, measurable progress toward achieving the goals established in the case plan and had worked diligently toward reunification. The court indicated that the goal of the case was to authorize a plan to return Y.F. to the custody of Forbes, and Forbes was ordered to complete all requirements of the case plan, to submit to DHS personnel in her home to assist with appropriate cleaning and environmental needs, and to maintain an appropriate environment for Y.F. The circuit court authorized weekly unsupervised visitation with Y.F. at Forbes's home, as long as the home was environmentally appropriate.

At the fifteen-month-review hearing in December 2015, the circuit court found that Forbes was only in partial compliance with the case plan. Forbes had not demonstrated stability because she was now unemployed, she had failed to pay her outstanding rent, and she was on the verge of being evicted from her current residence. The court set concurrent case goals of reunification and adoption and again ordered Forbes to obtain and maintain stable employment and safe housing. The court authorized DHS to file a petition to terminate parental rights.

A petition to terminate Forbes's parental rights was filed on December 30, 2015. The sole ground for termination alleged in the petition was the twelve-month failure-to-remedy ground found in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Repl. 2015). The petition further alleged that termination was in Y.F.'s best interest.

SLIP OPINION

The termination hearing was held on March 16, 2016. At the hearing, Bonnie Bryant, Forbes's therapist, testified that she began counseling Forbes in September 2015 to address her issues with independent living, managing a household and a budget, managing her relationships with others, and parenting skills. Bryant indicated that during her first session with Forbes on September 29, 2015, Forbes was supposed to have unsupervised visitation with Y.F. at her home. However, the home was not appropriate for the child because there was broken glass on the floor, there were empty liquor and beer bottles beside the bed, and there were two unknown males present in the one-room studio apartment. While Bryant indicated that the condition of Forbes's home was appropriate during her subsequent visits, she testified that she discharged Forbes in November 2015 because Forbes had missed three counseling appointments. According to Bryant, Forbes was codependent on her mother and had failed to make progress in establishing healthy boundaries in her relationship with her mother. Bryant testified that Forbes still needed counseling to address those issues and to improve her independent living skills.

Jamie Moran, the DHS supervisor assigned to the family, testified that at the time of Y.F.'s removal, Forbes and Y.F. had been living with the grandmother, whose home was in a state of extreme environmental neglect. Moran indicated that Y.F. had remained out of Forbes's custody for seventeen months and that despite offering every service that DHS could possibly offer to Forbes, she had not been able to achieve a stable home and employment. Although Forbes had been working hard and had obtained an appropriate home and a job at the time of the permanency-planning hearing in September 2015, Moran testified that shortly

after that hearing, Forbes lost her home and became unstable again. Moran indicated that Forbes had moved back in with her mother by the time of the December 2015 fifteen-month-review hearing. Since that hearing, Moran testified that Forbes had not made any further progress in remedying the primary concern in the case, which was Forbes's lack of environmental stability. She indicated that Forbes had worked at six different jobs and had lived in seven different homes, including several motels, since the case had been opened. In addition, Moran indicated that Forbes had tested positive for methamphetamine since the last hearing. Moran testified that Forbes would not be able to correct the conditions that had caused removal of Y.F. within a reasonable period of time and that it was in Y.F.'s best interest to terminate parental rights so that she could obtain a stable and permanent home.

James Byrd, the DHS family service worker assigned to the family, testified that Forbes had primarily been staying in motels, although he had also dropped her off at her mother's home on one or two occasions. Byrd indicated that Forbes was currently living at the racetrack, where she was employed for the race season. He testified that Forbes had recently acquired HUD housing, although she had not moved into the home yet. Due to Forbes's failure to demonstrate that she could maintain a consistent, stable home and employment, Byrd stated that it was in Y.F.'s best interest to terminate Forbes's parental rights.

Shirley Watkins, an adoption specialist with DHS, testified that Y.F. is very adoptable. She stated that Y.F. has no major medical or developmental issues and that there were no barriers to her adoption. Watkins indicated that she had identified more than four hundred potential adoptive families that had expressed preferences for a child with Y.F.'s characteristics.

SLIP OPINION

Forbes testified that she had been aware since the beginning of the case that it was important for her to obtain stable employment and housing. She admitted that she had failed to do so and that her current living situation at the racetrack was not appropriate for Y.F. However, Forbes stated that she had just obtained a two-bedroom apartment with HUD assistance and that she would be moving in that day. Forbes admitted that she did not yet have any furniture or a toddler bed for Y.F. but stated that she planned to obtain these items. Although Forbes often depended on her mother to provide her with transportation, Forbes indicated that she would sever her relationship with her mother if that was necessary in order to reunify with Y.F.

After hearing all of the evidence, the circuit court entered an order on March 30, 2016, finding that the alleged ground for termination had been proved by clear and convincing evidence. The court also found that there was clear and convincing evidence that termination of Forbes's parental rights was in the best interest of Y.F. based on the likelihood that she would be adopted and the potential harm to her health and safety if she were to be returned to her mother. Forbes has timely appealed from this order.

The rights of natural parents are not to be passed over lightly; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). A circuit court's order terminating parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof

SLIP OPINION

that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

Pursuant to Ark. Code Ann. § 9-27-341(b)(3)(A), an order terminating parental rights shall be based on a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent. The order terminating parental rights also must be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B).

On appeal, Forbes does not challenge the circuit court's finding that termination was in Y.F.'s best interest. Instead, she argues that there was insufficient evidence to support the sole statutory ground for termination.

The circuit court found that clear and convincing evidence supported the ground for termination alleged by DHS, which was the twelve-month failure-to-remedy ground contained in Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*:

> That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite

a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

Forbes argues that there was insufficient evidence to support the circuit court's decision to terminate on this ground because she was incarcerated at the time of Y.F.'s removal and was therefore not responsible for the deplorable environmental conditions that had caused the child to be removed from the grandmother's home. She cites to this court's decision in *K.C. v. Arkansas Department of Human Services*, 2010 Ark. App. 353, 374 S.W.3d 884, in support of her argument.

In *K.C.*, we held that there was insufficient evidence to support the twelve-month failure-to-remedy ground for termination where both the child, L.C., and his then thirteen-year-old mother, K.C., were removed from the home of Green, K.C.'s mother, based on allegations that K.C. had been sexually assaulted by a male who frequently visited the home. We stated that it was impossible for K.C. to remedy the conditions that resulted in removal because she was not the cause of the removal of L.C. *Id*. at 12, 374 S.W.3d at 891. *See also Lewis v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 154, 391 S.W.3d 695 (reversing termination of father's parental rights because he was not responsible for the conditions causing removal and stating that if the statutory ground for termination, as worded, does not fit the facts of the case, then it should not be used).

However, the facts in the present case are distinguishable from those in *K.C.* and in *Lewis*. Although Y.F. was removed from the grandmother's home while Forbes was incarcerated, the evidence showed that Forbes and Y.F. had been living with the grandmother

and that Forbes had been incarcerated only one week prior to Y.F.'s removal. The circuit court also noted in its probable-cause order that a supportive-services case had been opened on Forbes in July 2014 but that these services did not prevent removal of Y.F. In the adjudication order, the circuit court found that Y.F. was dependent-neglected based on neglect caused by Forbes's failure or inability to provide for the essential needs of the child, specifically including the failure to provide a shelter that did not pose a risk to the health and safety of Y.F. Forbes was ordered to obtain a home that was environmentally safe and clean and to maintain a stable home for a period of at least six months, which she failed to do during the seventeen months that Y.F. was in DHS custody. Thus, the primary issue to be remedied in this case was not the environmental neglect of the grandmother; instead, it was Forbes's neglect of Y.F. and her failure to provide a safe and stable environment for the child that had to be remedied in order for Y.F. to be returned to her custody. Because there was sufficient evidence presented to prove that Forbes had failed to correct the conditions that had caused removal of Y.F. during the seventeen months that the child was out of the home, the circuit court's termination of Forbes's parental rights was not clearly erroneous. We therefore affirm.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.